UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MENWON WONGBAY,<br>　　Plaintiff,<br><br>　　v.<br><br>BALISE TOYOTA OF WARWICK<br>(BALISE T, LLC), alias,<br>　　Defendant. | )<br>)<br>)<br>)<br>)　C.A. No. 22-cv-00458-MSM-AEM<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

　　Before the Court is defendant Balise Toyota of Warwick's ("Balise") Motion for Summary Judgment. (ECF No. 49). The plaintiff, Menwon Wongbay, sued Balise for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Rhode Island Fair Employment Practices Act, R.I.G.L. § 25-5-1 *et seq.* ("FEPA"), the Rhode Island Civil Rights Act of 1990, R.I.G.L. § 42-112-1 *et seq.* ("RICRA"), and the Rhode Island Payment of Wages Act, R.I.G.L. § 28-14-1 *et seq.* ("RIPWA") (ECF No. 1). Counts I, II, and III of Ms. Wongbay's Complaint allege race, color, ethnic, and age discrimination and retaliation in violation of Title VII, FEPA, and RICRA respectively, while Count IV alleges unpaid wages in violation of RIPWA.

　　Following Balise's Partial Motion to Dismiss, (ECF No. 11), Ms. Wongbay's age and ethnicity claims under Title VII and FEPA were dismissed. (ECF No. 14.) Balise now seeks dismissal of all of her remaining claims. For reasons below, the Court GRANTS Balise's Motion with respect to Ms. Wongbay's remaining age

discrimination claim under Count III but DENIES it with respect to all of her other claims.

## I. BACKGROUND

Balise engages in the sale and servicing of new and used vehicles in Rhode Island. (ECF No. 49-2 ¶ 1.) Ms. Wongbay began working as a Business Development Manager ("BDM") at Balise in August 2020. (ECF No. 49-4.) Ms. Wongbay's immediate supervisor described her as "the top performer" during the course of her employment, at least "[based on] numbers or monetarily." (ECF No. 49-9 at 21.) Nevertheless, Balise involuntarily terminated Ms. Wongbay in March 2021. (ECF No. 54-1 at 28–29.)

The parties disagree on many the factual details regarding Ms. Wongbay's employment at Balise. It is undisputed that there are no contemporaneous written records of either reprimands or other formal warnings issued to Ms. Wongbay regarding her performance or conduct during her time at Balise. *See* ECF No. 58 at 11. Instead, the parties have presented only a handful of emails suggesting friction between Ms. Wongbay, her manager, and her supervisor, regarding both her compliance with certain corporate policies and inaccuracies in some of her commission reporting. *See* ECF No. 49-13. Additionally, following Ms. Wongbay's termination, her supervisor purportedly drafted a document to be added to Ms. Wongbay's Human Resources file that outlines a range of infractions allegedly committed by Ms. Wongbay. (ECF No. 54-18.) While Balise claims that Ms. Wongbay's termination "followed a formal audit confirming misconduct," (ECF No.

49-1 at 2), Ms. Wongbay disputes this, as Balise has produced neither any written record of that audit nor any authenticated records of the underlying performance data upon which the audit was allegedly premised.[1]  *See* ECF Nos. 58 at 33.

Ms. Wongbay alleges several incidents that, according to her, indicate that she was fired for discriminatory and retaliatory reasons, rather than based on her performance.  First, during her interview for the BDM position, Ms. Wongbay wore a blue medical face mask that she alleges, in conjunction with her name, gave the impression that she is Asian, despite her being Black.  *See* ECF No. 54-1 at 16, 31.  When she reported for work, however, one of her new coworkers allegedly expressed surprise at Ms. Wongbay's race and suggested that the manager had indicated that he thought Ms. Wongbay was Asian.  *Id.* at 17–18.  Ms. Wongbay asserts that this incident, in conjunction with a number of other purported workplace comments regarding contemporary political events, as well as the fact that she was the only Black person on her work team, contributed to a workplace pervaded with racially discriminatory attitudes.  *Id.* at 16–23.  Ms. Wongbay claims that she reported racist remarks and racial discrimination to her supervisor and her manager, and that she protested her termination as being discrimination at the time it occurred.  *Id.* at 23, 25, 29–30.

Ms. Wongbay also cites unflattering comparisons to a previously terminated employee (herself of a minority race) allegedly made by her manager and fellow

---

[1] At least some of that data is apparently no longer available to Balise after a change in its software systems.  *See* ECF No. 58-7 at 25–33.

3

employees as likewise contributing to this sense of racial animus in her workplace. *Id.* at 17–18. Ms. Wongbay further contends that her White co-workers were treated differently—in some instances, preferentially—despite engaging in similar conduct and despite Ms. Wongbay being a higher-performing employee. (ECF No. 54 at 4–8.) Balise disputes the existence or character of nearly all the events underpinning Ms. Wongbay's allegations, including her contemporaneous complaints of racial discrimination and her comparative assessment of her coworkers. *See* ECF No. 58 at 12–29.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Adv. Comm. Notes to Fed. R. Civ. P. 56). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. . . . If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.*, 777 F. Supp. 167, 169 (D.R.I. 1991) (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure, § 2725, at 104 (1983)).

"[I]n employment discrimination cases 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). But "for purposes of summary judgment, [a court] cannot weigh the credibility of witnesses making [discriminatory] comments and must assume they were made as stated." *Santiago-Ramos*, 217 F.3d at 55.

5

Ultimately, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. DISCUSSION

Ms. Wongbay acknowledges that her remaining age-based discrimination claim under RICRA is meritless and makes no effort to defend it. (ECF No. 53 at 1 n.1.) Instead, she maintains three core claims against Balise: first, that Balise engaged in race and color discrimination in violation of Title VII, FEPA, and RICRA (Counts I, II, and III of her Complaint), as well as ethnic discrimination in violation of RICRA (Count III); second, that Balise retaliated against Ms. Wongbay in violation of those same statutes (also Counts I, II, and III); and third, that Balise withheld wages from her in violation of RIPWA (Count IV). (ECF No. 53 at 1.) The Court addresses each remaining claim in turn.

#### A. Discrimination in Violation of Title VII, FEPA, and RICRA

##### 1. Legal Standard for Discrimination

It is "routine practice" for courts to analyze claims under Title VII, RICRA, and FEPA together. *Ferro v. Rhode Island Dept. of Transp. ex rel. Lewis*, 2 F. Supp. 3d 150, 157 (D.R.I. 2014); *see also Ferreira v. Child and Fam. Services*, 222 A.3d 69, 77 (R.I. 2019) ("This Court has also previously adopted the legal framework employed by the federal courts when considering these claims."). When there is a lack of direct evidence of discrimination, "[t]he familiar *McDonnell Douglas* burden-shifting

6

framework applies to [a plaintiff's] disparate treatment claims." *Ripoli v. R.I. Dep't of Hum. Servs.*, 123 F.4th 565, 571-572 (1st Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). "Under that framework . . . a prima facie case of discrimination requires the plaintiff to establish that she was a member of a protected class, that she was qualified for the job, that she suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving rise to an inference of discrimination." *Ripoli*, 123 F.4th at 571-572 (citing *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019)).

Once the plaintiff has established a prima facie case, "burden of production shifts to the defendant, who must provide a legitimate, non-discriminatory reason for the adverse employment action." *Ripoli*, 123 F.4th at 572 (1st Cir. 2024) (citing *Boykin v. Genzyme Therapeutic Prods., LP*, 93 F.4th 56, 60 (1st Cir. 2024)). Thereafter, "the burden reverts to the [plaintiff] to produce evidence sufficient to show that the [defendant's] articulated reason for [terminating] her was not its real reason but, rather, was merely a pretext for discrimination." *Id.* at 574 (citing *Boykin*, 93 F.4th at 60).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "All that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994). "However, it is important to remember that the contours of a prima facie case are flexible and situation-specific." *Id.*

7

Nevertheless, the First Circuit has identified several relevant considerations when evaluating whether a plaintiff has established a prima facie case, particularly with respect to the last of the required elements: proving that the adverse employment action transpired under circumstances giving rise to an inference of discrimination. First, this element "[g]enerally" requires the plaintiff show that the plaintiff's "position remained open or was filled by a person with similar qualifications. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003); *see Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001). But this is not a rigid requirement, and can instead, for example, be satisfied by showing that the employer had a continued need for 'someone to perform the same work after [the complainant] left.'" *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990) (quoting *Lipsett v. U. of Puerto Rico*, 864 F.2d 881, 899 (1st Cir. 1988), *aff'd,* 759 F. Supp. 40 (D.P.R. 1991)). Ultimately, as explained in *McDonnell Douglas*, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13.

Second, "[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent." *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1st Cir. 1996); *see, e.g.*, *Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 55 (1st Cir. 2008) (finding insufficient evidence of discriminatory intent where an employee used the term "dinosaur" in describing an office's operations but did not refer to any specific employee and his or her age). Thus, "'stray workplace remarks,' as well as

8

statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002); *see, e.g.*, *Serrano-Colon v. U.S. Dept. of Homeland Sec.*, 121 F.4th 259, 272 (1st Cir. 2024) (finding insufficient evidence of discriminatory intent where an alleged discriminatory comment was made by an unidentified individual).

A third relevant consideration is the "same actor inference." *See Rodriguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 46 (1st Cir. 2019). "[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991)). The logic behind this inference is that a person who hires a person with full knowledge of that person's protected characteristic would be unlikely to fire that person based on that characteristic relatively shortly thereafter. *See Proud* 945 F.2d at 797 ("[T]he individual who fired Proud is the same individual who hired him less than six months earlier with full knowledge of his age.").

Fourth, "[a] plaintiff in a disparate treatment case may attempt to show that 'others similarly situated to him in all relevant respects were treated differently by the employer.'" *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114 (1st Cir. 2015) (quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003) (internal quotation marks

9

omitted)). "'Reasonableness is the touchstone' when considering comparators in a disparate treatment case; that is, 'while the plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances.'" *Id.* (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)). The Court asks "whether 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" *Id.* (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).

Comparator evidence is also relevant at the third stage of the *McDonnell Douglas* framework.[2] *See Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 43–44 (1st Cir. 2001); *Kosereis*, 331 F.3d at 213. Showing that an employer did not take adverse action against a plaintiff's fellow employees when those employees acted in a similar manner but lacked the plaintiff's protected characteristics supports an inference that the employer's actions were in fact based on the plaintiff's protected characteristics. *See Kosereis*, 331 F.3d at 213–14.

More generally, the Supreme Court has noted the following regarding the veracity of allegedly pretextual explanations for employment decisions:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate

---

[2] While the First Circuit has held that "the time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual," *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999), it has clarified that this was a rejection of courts *requiring* comparative evidence at the prima facie stage. *See Kosereis*, 331 F.3d 207 at n.1 (clarifying *Conward* by explaining "[i]t is a different issue if a plaintiff opts to provide comparative data as part of a prima facie case.").

10

> circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000) (cleaned up). Thus, although not dispositive, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148; *but c.f. Gillen v. Fallon Ambul. Serv., Inc.*, 283 F.3d 11, 30 (1st Cir. 2002) (explaining that the ultimate question is not one of veracity, but whether there is sufficient evidence of animus).

Ultimately, however, "there is no 'mechanical formula' for establishing pretext." *Alston v. Town of Brookline*, 997 F.3d 23, 45 (1st Cir. 2021). "One size does not fit all, and the inquiry into pretext is the kind of inquiry in which 'everything depends on the individual facts.'" *Id.* (quoting *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 7 (1st Cir. 2000)). As such, the First Circuit admonishes to be "'particularly cautious' about taking such questions out of the jury's hands." *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 40 (1st Cir. 2003) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998)).

2. Application

Balise does not dispute that Ms. Wongbay is a member of a protected class, that she was qualified for her position, or that she suffered an adverse employment action (i.e., termination). *See* ECF Nos. 49-1; 57. Instead, Balise argues that there is insufficient evidence of a causal connection between Ms. Wongbay's race and her termination. *See* ECF No. 49-1 at 4–7. Balise further argues that, even were Ms. Wongbay to establish a prima facie case of discrimination, it has provided legitimate non-discriminatory reasons for its actions (i.e., that she was fired for performance and non-compliance issues), and that Ms. Wongbay has not provided sufficient evidence that those reasons are pretextual. *Id.* at 7–9.

Based on its review of the record, the Court finds that there are disputes over material facts regarding Ms. Wongbay's discrimination claims. While the allegedly racially discriminatory commentary made by Ms. Wongbay's coworkers may have alone constituted "stray workplace remarks" insufficient to support a finding of discrimination, Ms. Wongbay cites comparator evidence that, taken in the light most favorable to her, suggests that she may have been subjected to disparate treatment as compared to her coworkers for similar workplace conduct. And although Ms. Wongbay was both hired and involuntarily terminated by the same manager within a relatively short timeframe, the "same actor inference" is not implicated because that manager testified that he was unaware of Ms. Wongbay's race at the time he hired her. *See* ECF No. 58-5 at 4–5. Under these facts, disputed as they are, Ms. Wongbay has met the "easily made" burden of establishing a prima facie

discrimination case. *See Gillen v. Fallon Ambul. Serv., Inc.*, 283 F.3d 11, 30 (1st Cir. 2002).

Further, while Balise has satisfied its burden of articulating legitimate, nondiscriminatory reasons for terminating Ms. Wongbay (e.g., her performance and compliance with workplace policies), Ms. Wongbay has raised enough issues of material fact regarding the pretextual nature of those reasons as to preclude summary judgment. Ms. Wongbay's comparator evidence is again relevant here: it is undisputed that Ms. Wongbay's job performance, at least according to some numerical metrics, was greater than that of her coworkers, and the parties dispute the extent to which her coworkers engaged in similar workplace errors without being fired. Given this purported disparity in treatment, coupled with the lack of contemporaneous documentary evidence justifying Balise's decision to fire Ms. Wongbay, the disagreement between the parties regarding other aspects of her performance, and her disputed allegations of a workplace rife with racial animus, the Court finds summary judgment to be unwarranted.[3]

---

[3] In its defense to both Ms. Wongbay's discrimination and retaliation claims, Balise also invokes *Faragher v. City of Boca Raton* for the principle that an employer is shielded from liability for a supervisor-created hostile work environment when "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." 524 U.S. 775, 807 (1998). But as *Faragher* made clear, "[n]o affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.* *Faragher* is therefore inapplicable here, where Ms. Wongbay was involuntarily terminated.

The Court therefore DENIES with respect to her race and color discrimination claims under Counts I, II, and III of her Complaint, as well as her ethnic discrimination claim under Count III. As Ms. Wongbay has abandoned her age discrimination claim under Count III, the Court GRANTS summary judgment with respect to that claim.

### B. Retaliation in Violation of Title VII, FEPA, and RICRA

#### 1. Legal Standard for Retaliation

Retaliation claims follow a similar burden-shifting framework to discrimination claims. To prevail on a retaliation claim, the plaintiff must prove that they (1) engaged in "protected conduct" under state or federal law; (2) that they suffered "an adverse employment action"; and (3) that "a causal connection existed between the protected conduct and the adverse action." *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 42 (1st Cir. 2011) (quoting *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir. 1998)). "Once the plaintiff has made a prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." *McMillan*, 140 F.3d at 309. "If the defendant does so, the plaintiff must show that the defendant's proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant's retaliatory animus." *Id.*

An employee engages in activity protected by Title VII if the employee has either (1) "opposed any practice made an unlawful employment practice" by Title VII;

14

or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C. § 2000e-3(a); *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009). To establish participation in a protected activity, the plaintiff "need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII." *Fantini*, 557 F.3d at 32 (quoting *Wimmer v. Suffolk Cnty. Police Dep't,* 176 F.3d 125, 134 (2d Cir. 1999)). Instead, the plaintiff "must demonstrate only that [she] had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Fantini*, 557 F.3d at 32 (quoting *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

### 2. Application

As with her discrimination claims, disputes of material fact preclude summary judgment for Ms. Wongbay's retaliation claims. Ms. Wongbay alleges that she engaged in protected activity by reporting racial discrimination to her supervisor and to her manager, and that her firing—an obvious adverse employment action—was causally connected to her protected conduct. Balise disputes both Ms. Wongbay's claimed reporting and any causal connection to her termination. Whether Ms. Wongbay made a report of racial discrimination is a clear issue of material fact, based on conflicting deposition testimony offered by Ms. Wongbay and Balise.

Further, while Balise's non-discriminatory justifications for terminating Ms. Wongbay apply with equal force to her retaliation claims, so too do Ms. Wongbay's

allegations that those justifications were pretextual. Viewed in the light most favorable to her, Ms. Wongbay has presented sufficient evidence suggesting that Balise's decision to terminate her was not based on the performance issues it originally cited as justification. While the causal connection drawn by Ms. Wongbay between her reports of discrimination and her firing may be slimmer than the connection between Balise's alleged discriminatory animus and her firing, the Court finds she has levied enough evidence that Balise's actions were pretextual such that summary judgment is unwarranted.

The Court therefore DENIES summary judgment for Balise on Ms. Wongbay's retaliation claims.

### C. Unpaid Wages in Violation of RIPWA

#### 1. Legal Standard for Unpaid Wages

Under RIPWA, "whenever an employee separates or is separated from the payroll of an employer, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment." R.I. Gen. Laws § 28-14-4(a). RIPWA defines "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, commission basis, or other method of calculating the amount." *Id.* § 28-14-1(6). "RIPWA provides a cause of action to employees who have not been paid wages by their employers." *Linkevich v. Smithfield Foods, Inc.*, 520 F. Supp. 3d 150, 153 (D.R.I. 2021) (citing R.I. Gen. Laws § 28-14-20(b)).

The plain text of RIPWA defines wages to include commissions. *Linkevich*, 520 F. Supp. 3d at 153. As a threshold matter, Balise argues that its commission structure is distinguishable from RIPWA's general definition because commissions were payable only after confirmed sales or task completions. (ECF No. 49-1 at 14–15). It is true that "Rhode Island Law recognizes an employer's ability to set contingencies on whether commission income is earned." *Ryder v. Pearson Educ., Inc.*, 486 F. Supp. 3d 489, 506 (D.R.I. 2020) (citing *Nuzzo v. Nuzzo Campion Stone Enterprises, Inc.*, 137 A.3d 711, 716-17 (R.I. 2016)). But this is beside the point: at issue here is whether Ms. Wongbay was paid all the commissions that she had earned—i.e., all those for which the necessary contingencies had been satisfied.

As for the burden of proof in unpaid wages claims under RIPWA, Rhode Island courts "have consistently looked to federal law for guidance in the field of labor law." *DiGuilio v. R.I. Broth. of Corr. Officers*, 819 A.2d 1271, 1273 (R.I. 2003). As such, this Court looks to the standard articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), for guidance. *See also Sebren v. Harrison*, 552 F. Supp. 3d 249, 259 (D.R.I. 2021) (applying *Anderson* to claims brought under both the Fair Labor Standards Act and RIPWA). Under *Anderson*, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the employee bears the following burden of proof:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of

17

> work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Anderson*, 328 U.S. at 687–88. "That is a burden the First Circuit has held is 'minimal.'" *Sebren*, 552 F. Supp. 3d at 260 (quoting *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991)).

*Anderson* also cautions that "[d]ue regard" must be given to the fact that it is the employer, not the employee, who typically has the duty and the ability to "know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson*, 328 U.S. at 688. So if the employee satisfies the employee's initial burden of proof, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the law]." *Id.* But an employer's failure to keep records "does not mean [the employer] has no basis with which to raise a genuine issue of fact as to how many hours [the employee] worked." *Sebren*, 552 F. Supp. 3d at 260.

### 2. Application

Ms. Wongbay alleges that she is owed approximately $3,600 in commission payments from her last month of employment with Balise, March 2021. (ECF Nos. 54 at 13; 54-1 at 30.) Balise disputes that Ms. Wongbay is owed any remaining commission payments. (ECF No. 49-1 at 15–16.) Neither side has presented clear documentary support for its position, in part because of Balise's aforementioned switch in its software systems. *See* ECF Nos. 58-7 at 25–33 (detailing the change in systems); 49-1 at 15 (arguing that Ms. Wongbay "offers no supporting documentation, no witness corroboration, and no calculations" to support her unpaid wages claims);

53 at 25–26 ("Defendant's only response has been to assert, without documentary support, that some commissions were 'not entitled' or improperly obtained . . . without the underlying CRM data, a full accounting is impossible."). The question, therefore, is whether Ms. Wongbay's unsupported allegations of unpaid commissions—and Balise's denial of those allegations—raise an issue of material fact that would preclude summary judgment.

The Court finds that they do. Given the lack of documentation presented by Balise, the Court applies *Anderson*'s framework to her claim. Under that framework, viewed in the light most favorable to Ms. Wongbay, her own sworn deposition testimony and her responses to Balise's Request for Admissions present sufficient evidence to establish an issue of material fact as to whether she is owed unpaid wages. *See* ECF Nos. 54-1 at 30; 54-19 at 6. As the employer, Balise should have been best positioned to present evidence to rebut Ms. Wongbay's claims. *See Anderson*, 328 U.S. at 688. While its inability to do so does not automatically entitle Ms. Wongbay to prevail on her claim, it is sufficient to preclude summary judgment. *See Sebren*, 552 F. Supp. 3d at 260.

The Court therefore DENIES summary judgment for Balise on Ms. Wongbay's unpaid wages claim.

## IV. CONCLUSION

For the above reasons, Balise's Motion for Summary Judgment (ECF No. 49) is GRANTED with respect to her age discrimination claim under Count III but is otherwise DENIED with respect to all of her other claims.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

November 4, 2025